CHARLES HALDANE, Respondent, *v.* NEW YORK STATE NATIONAL BANK OF ALBANY (Sued Herein as NEW YORK STATE NATIONAL BANK), Appellant.

First Department, December 7, 1917.

**Banks and banking — corporations — pledge of stock as collateral for payment of note — " recourse " to collateral.**

Where a borrower from a bank on his promissory note deposited capital stock of another bank as collateral, and his note provided " that if recourse is had to the collaterals, any excess of collaterals upon this note shall be applicable to any other note or claim now or hereafter held by said Bank against me," the application of money received from the liquidating

agent of the bank, the shares of which were deposited as collateral, toward the payment of the note either before or after its maturity, constituted " recourse " to the collateral within the meaning of the agreement, giving the bank the right to apply any excess over the sum sufficient to satisfy the first note to any other obligations of the borrower held by it, especially where the borrower, after such application, executed a renewal note for the balance, thereby consenting to the direct application of the collateral to the reduction of his debt.

The bank was not bound to go through the empty form of offering the money received from the liquidating agent for sale before applying it toward the payment of the note.

APPEAL by the defendant, New York State National Bank of Albany, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 7th day of April, 1917, sustaining a demurrer to the second separate defense contained in the amended answer.

*James F. Tracey*, for the appellant.

*Heber Smith*, for the respondent.

SHEARN, J.:

The defendant bank appeals from an order sustaining a demurrer to the second separate defense. The action was brought to recover $796.29, representing the proceeds of certain collateral pledged with the defendant by one Lecky and thereafter assigned to the plaintiff.

The defense demurred to alleges that on May 31, 1916, the defendant loaned Lecky $2,150 on his promissory note, payable to the order of the defendant four months after date, and upon fourteen shares of the capital stock of the Ashokan National Bank pledged as collateral. The note contained the following provision: " It is hereby agreed and understood, that if recourse is had to the collaterals, any excess of collaterals upon this note shall be applicable to any other note or claim now or hereafter held by said Bank against me." Prior to making this note the defendant had loaned to and discounted for Lecky a note for $2,750 made by one Berry, on which there was due at the time of the making of the Lecky note the whole principal sum of $2,750. On August 7, 1916, the defendant received from the liquidating

agent in charge of the affairs of the Ashokan National Bank $1,540 on account of the value of the fourteen shares of stock pledged as aforesaid, " which sum [as the answer alleges] the defendant applied upon the collateral note aforesaid, dated May 31, 1916, leaving a balance unpaid of Six Hundred thirty-nine Dollars and thirty-five cents ($639.35)." It will be observed that the Lecky note of May 31, 1916, fell due on October 1, 1916. On or about October 2, 1916, the note of May 31, 1916, " being then due and payable," defendant took a renewal note from Lecky dated October 2, 1916, for the sum of $639.35, with interest, which note was in the same form as the original note, and the same fourteen shares of stock were mentioned in the note as collateral security for payment thereof. This note fell due on November 2, 1916. On October 26, 1916, the defendant received from the liquidating agent the further sum of $1,438.08 which the defendant applied to the payment of the renewal note of October 2, 1916, leaving a balance in defendant's hands of $795.53, which balance the defendant claims the right to hold as collateral security for the payment of $2,750 on the discounted Berry note.

The whole question turns upon whether the defendant bank did have recourse to the collateral, for if it did it is conceded that it had the right to apply any excess over the sum sufficient to satisfy the first note to any other obligations of Lecky held by it. The view taken by the learned justice at Special Term was that the money received from the liquidating agent merely took the place of the stock collateral and that the receipt of this money from the liquidating agent and crediting it on the notes cannot be regarded as " recourse " to the collateral. The justice said: " These conditions seem to me to amount to a payment of the notes prior to or at their maturity, and such payment released the collateral." Under these circumstances it was held that the plaintiff was entitled to receive the balance of the collaterals and that the defense was insufficient. In the first place, it appears to be assumed that the actual application of the $1,540 received from the liquidating agent on August 7, 1916, was made on or about that day and before the note matured. It is not so alleged in the answer. It is true that paragraph 11, reciting the

receipt of the money and its application, is all in one sentence and that it sets the date of the receipt of the dividend as on or about the 7th day of August, 1916, but that does not necessarily mean that the defendant made the application on the same date that it received the money. In the second place, even if the application was made prior to the maturity of the note, this did not amount to payment of the note for it left a balance of $639.35 due thereon. Of course the bank might make a mistake that would have the effect of releasing the collateral, but certainly no one would impute to the bank any intention of accepting a sum $639.35 short of the face of the note as payment thereof and at the same time releasing the collateral for the balance due. In the third place, and most important, the learned justice fails to give effect to what happened on October 2, 1916, the day after the note fell due. Lecky was then in default. His note was " then due and payable " as the answer alleges and the demurrer concedes. Even if a partial application had been made, Lecky was in default at least to the extent of $639.35. Yet on the next day, although Lecky had not paid a dollar to the bank, his obligation was reduced to $639.35, evidenced by the one month note. How was his debt thus reduced and adjusted on the day after the maturity of the note? Obviously by resort to the collateral. We know that that was where the money came from. Shall we say, simply because the bank did not go through the form of a sale of the collateral, which was now to the extent of about one-half in the form of money, but instead, with Lecky's consent (as is shown by his executing the renewal note), applied the collateral directly to the reduction of his debt, that the bank did not have recourse to the collateral? To do so is to put form above substance. The bank got its money after default by realizing on the collateral, by resort to the collateral, by recourse to the collateral, and it was not obliged to go through the empty form of offering $1,540 in currency for sale.

This is the whole question, for if the bank did have recourse to the collateral, the balance, under the terms of the notes, was applicable to all other notes unpaid, and, as the Berry note was one and exceeded the value of the collateral, neither Lecky nor his assignee could recover it.

The order should be reversed, with ten dollars costs and disbursements, and the demurrer overruled, with leave to the plaintiff to withdraw the demurrer upon payment of costs in this court and ten dollars costs of motion at Special Term.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and demurrer overruled, with leave to plaintiff to withdraw demurrer upon payment of costs in this court and ten dollars costs of motion at Special Term.